E-FILED
Monday, 22 November, 2021  01:17:55 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RONALD E. INMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-3295 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

Following a video hearing, the Administrative Law Judge (ALJ) issued a Decision denying Plaintiff  Ronald E. Inman's claim for Disability Insurance Benefits and Supplemental Security Income under Sections 216(i), 223(d), 1611 and 1614 of the Social Security Act.

The Plaintiff moves for summary judgment.

The Commissioner moves for summary affirmance.

## I.      BACKGROUND

This case was previously remanded from the Appeals Council to give further consideration to whether Plaintiff Inman could perform his past relevant work and,

if so, whether he could perform it given the residual functional capacity (RFC) supported by the medical evidence.

Plaintiff Inman was born in 1958 and was approximately 54 years old at the time of his onset date.  Disability was alleged due to bipolar disorder, sleep issues and anxiety.

In her decision, the ALJ found that Inman had not engaged in substantial gainful activity since his onset date of June 15, 2012.  The ALJ found the following severe impairments: (1) chronic obstructive pulmonary disease ("COPD"); (2) hypertension; (3) dependent personality disorder; (4) anxiety disorder and (5) bipolar disorder.

At Step Three, the ALJ found no Listing to be met or equaled under 20 CFR 404, Subpart P, Appendix 1.  The ALJ found that Inman could perform the residual functional capacity (RFC) of light work, as defined in 20 C.F.R. § 404.1567(b), except he could have no concentrated exposure to fumes, odors, gases or dust, poor ventilation, temperature extreme, unprotected heights or hazardous machinery, was limited to simple, routine and repetitive tasks with only occasional changes in work processes, occasional interaction with coworkers, supervisors and the public of a brief and superficial nature, no strict production quotas, his productivity had to be measured on a daily and not hourly basis and reading and mathematics would not be

essential to performance of his job tasks.  On May 17, 2018, the ALJ found Inman could perform his past relevant work as a janitor, as it is actually performed.

Inman did not file written exceptions to the ALJ's decision and instead filed a complaint in federal court.  The ALJ's decision is the final decision of the Commissioner.  20 C.F.R. §§ 404.984(d); 416.1584(d).

## II.     DISCUSSION

### A. Standard of review

A claimant establishes disability by showing an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A disability is to be determined through application of a five-step sequential analysis: (i) substantial gainful activity; (ii) severe impairment; (iii) meeting or equaling a listing; (iv) ability to return to past relevant work; and (v) adjustment to other work in significant numbers." 20 C.F.R. § 404.1520(a)(4).

When, as here, the Plaintiff did not file exceptions to the ALJ's decision, the ALJ's decision stands as the Commissioner's final decision.   20 C.F.R. §§ 404.984(d).  The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  "Substantial evidence" is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted).  Although a court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id*. at 856-57.  The ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted).

B. Listing 12.04

Inman claims that 20 C.F.R. § 404, Subpt. P., App'x 1 § 12.04 has been met or equaled.  Section 12.04 requires a marked impairment in two areas: (1) Understand, remember or apply information; (2) interacting with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself.

The ALJ found that Inman had a moderate limitation in understanding, remembering or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting or maintaining pace; and moderate limitation in his ability to adapt or manage himself.

Under the Listing, examples of understanding, remembering or applying information include:

> Understanding and learning terms, instructions, procedures; following one- or two- step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.

§12.00(E)(1).   Stephen G. Vincent, Ph.D., who performed a consultative examination for his mental health, found that Inman had a poor capacity to understand, remember or carry out simple one-and-two step instructions.  Inman alleges the Commissioner cherry-picked portions of the record to imply improvement.

Dr. August Adams checked off that Inman had a marked limitation in understanding and remembering simple instructions, making simple work-related decisions and interacting with others.  Around this time, Inman had a global assessment functioning ("GAF") score of 50, indicative of marked mental impairment.  His medications were adjusted and he was noted to have poor impulse control, irritable mood and grandiose delusions.  A number of mental status examinations listed Inman's short-term memory as impaired.  At times, Inman showed improvement before his status worsened in 2016.

The ALJ considered Inman's allegations and noted some of his limitations, stating that Inman has difficulty remembering generally, understanding what is said to him, following instructions, completing tasks, going to doctor's appointments without reminders, taking medication without reminders, shopping, driving and reading. His daughter or someone else helped Inman complete applications or other forms. The ALJ noted Inman stated he could perform simple maintenance, go to doctor's appointments and take medications. Moreover, Inman was able to provide information about his health, describe his prior work history and respond to questions about his medical providers.

The ALJ further observed that when Inman began undergoing mental health treatment, he saw a decrease in symptoms which included intact memory and ability to focus. By the end of 2014, Inman experienced relief from symptoms after taking his medications and those records show he experienced only short term memory lapse. The ALJ further stated that after continuing with his medications from 2015 through 2017, Inman achieved some success in controlling symptoms, with intact memory and focus. The Court concludes that substantial evidence supports the ALJ's finding that Inman had moderate but not marked limitations in this area.

With respect to social functioning, the Listing gives examples of cooperating with others; asking for help when needed; handling conflicts with others; stating his own point of view; initiating or sustaining conversation; understanding or

responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.  The ALJ states the record shows that he had a good rapport with provider, was described as pleasant and cooperative and had good interaction with staff.  Inman notes, however, that Dr. Vincent found he would have symptoms that would moderately to severely impact functional adaptive abilities to care for himself or interact with others.  He was withdrawn, had avoidant eye contact, was slummed and mask-like.  He had problems with his temper and difficulty handling anger issues.  He also at times had rambling or pressured speech.  Dr. Adams found Inman would have a marked social limitation.  A number of records reference issues with irritability on mental status examination.  Treatment providers noted him to be sarcastic.   Inman notes the ALJ does not address the line of evidence supporting a marked limitation.  Therefore, Inman alleges the ALJ's Step Three determination is erroneous and the ALJ fails to address evidence favorable to him which warrants remand.

In her Decision, the ALJ found moderate imitation in interacting with others.  The ALJ noted that based on Inman's statements, he is able to get along with others, spend time with friends and family, and live with others.  Moreover, the medical evidence showed that  Inman had a good rapport with providers, while being described as pleasant and cooperative.  The ALJ stated it also showed Inman had

7

good interactions with non-medical staff and appeared comfortable during appointments.

The ALJ found that Inman had moderate limitations with respect to his ability to concentrate, persist or maintain pace.  While Inman alleges limitations in concentrating, focusing, following instructions and completing tasks, Inman stated he was able to prepare meals and watch television.  The ALJ noted that no record evidence suggests an inability to complete testing that assesses concentration and attention.

In terms of adapting and managing himself, the ALJ noted the record shows that Inman has appropriate grooming and personal hygiene and no difficulty getting along with providers and staff.

The Court is unable to conclude that the record supports a marked limitation with respect to § 12.04.  Substantial evidence supports the ALJ's determination that Inman had no more than moderate limitations in understanding, remembering or applying information and interacting with others.  The same is true regarding interacting with others.  The ALJ had a legitimate basis to reject Dr. Adams's opinion that Inman had a marked limitation in understanding and remembering simple instructions, and in making simple work-related decisions and interacting with others, finding that the opinion was not supported by objective medical findings

that would be consistent with the degree of limitation stated. Dr. Adams also found that Inman could still carry out simple work instructions without limitation.

The ALJ gave little weight to consultative psychological examiner Dr. Vincent because the examination occurred before Inman began his mental health services and the opinion was not consistent with other evidence.

The ALJ gave significant weight to the state reviewing psychiatrist's opinion at the reconsideration stage. Dr. Pittman determined there were no marked limitations in any area and Inman's impairments did not meet or equal Listing § 12.04.

The ALJ addressed Inman's impairments and the objective medical evidence in finding Inman did not have an impairment or combination of impairments that met the Listing. The Court concludes that substantial evidence supports the ALJ's step 3 finding.

### C. ALJ's evaluation of opinion evidence

The treating physician rule applies to claims like this that were filed before March 27, 2017, when the regulations changed prospectively. 20 C.F.R. § 404.1520c(a); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). A treating physician's opinion on the nature and severity of the claimant's "medical condition is entitled to controlling weight if it is well supported by medical findings and

consistent with other record evidence." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

Inman claims that the ALJ afforded little weight to the opinion of the psychological consultative examiner and Dr. August Adams, his primary care provider, on the basis that Inman exhibited significant symptom relief despite any medical opinion suggesting that. Dr. Adams treated Inman for anger management, reports of forgetfulness and anger issues, paranoia and anxiety. Despite the ALJ's assessment that Dr. Adams found Inman could perform simple work tasks, he checked off a marked limitation in understanding and remembering simple instructions, making simple work-related decisions and interacting with others.

The ALJ attributed little weight to Dr. Adams's opinion. The ALJ explained that the doctor's treatment notes did not reflect objective findings consistent with the doctor's limitations and also because the opinion reflected Inman's condition before he began mental health treatment.

The ALJ further noted that, while Inman reported excessive crying, depressed mood, sleep disturbances and panic attacks in early 2014, he reported better results after a medication adjustment. Mental health treatment providers documented some impairment in short-term memory, but noted good motivation, intact memory and appropriate thought patterns. The ALJ noted that by the end of 2014, Inman reported

major symptom relief from his medications and he continued these mental health services through 2017 "with a fair degree of success in addressing his ongoing symptoms."  Moreover, the ALJ found that, at the time of his discharge from mental health services, he had demonstrated significant progress towards his treatment goals from using coping skills to manage his moods and taking on healthy lifestyle activities, such as walking and spending time with his family.

An ALJ may discount a treating physician's opinion if it is inconsistent with the record.  *See* 20 C.F.R. § 404.1527(c)(2).  The record shows that Inman demonstrated some normal findings when examined by Dr. Adams, including normal impulse control, good motivation, insight and judgment, appropriate affect and mood, and goal-directed, logical train of thought.  When Inman properly took his medication, he reported improved sleep and improved energy.  As the ALJ noted, Inman made progress toward his goals.  By 2014, he experienced a decrease in symptoms such as crying spells and anger and exhibited major symptom relief by October 2014. This continued in April 2015.  Notwithstanding a setback in 2016 after losing work, Inman maintained intact memory, normal orientation and perception, concrete stream of thought, no thoughts of harming others and logical thought process.  The Court concludes the ALJ provided sufficient reasons for not assigning more than little weight to the opinion of Dr. Adams.

Inman also contends that the ALJ's finding that the consultative examination from 2014 was inconsistent with the record is erroneous. Severe depression is documented in treatment notes. Variable speech was noted in treatment records, consistent with consultative psychological examiner Dr. Vincent's finding that his speech was easily derailed. Dr. Vincent had found he had paranoid thinking consistent with a history of delusions listed as bizarre or grandiose. Dr. Vincent further found Inman's daily activities and ability to care for himself was severely limited consistent with testimony that Inman did not perform activities around the home and relied on his daughter for counting pills.

The ALJ gave little weight to the opinion of Dr. Vincent that Inman would have difficulty completing simple, work-related instructions, interacting with others in the workplace, and adapting to changes in the work environment. The ALJ explained that she considered this opinion and gave it little weight because the overall treatment records did not reflect findings consistent with that extreme degree of litigation. The ALJ also noted that Dr. Vincent rendered his opinion before Inman began undergoing mental health treatment. While the ALJ noted that Dr. Vincent observed lethargy, apathy, depression and easily disrupted thought processes in January 2014, the records after he began medication reflected normal impulse control, good motivation, insight and judgment, appropriate affect and mood and

goal-directed logical train of thought.  Accordingly, the Court concludes that the ALJ provided sufficient reasons for assigning little weight to Dr. Vincent's opinions.

Inman also contends the ALJ erred in giving significant weight to the non-treating, non-examining State Agency opinion on reconsideration.  Inman claims that contrary to the treatment notes, the Agency opinion states that concentration and attention were normal and he had no delusions.  However, treatment notes not reviewed comprise almost 240 pages of mental health treatment and reflect delusions listed as bizarre or grandiose, short-term memory was listed as impaired, and poor concentration was documented.

Consistent with Dr. Pittman's opinion, later findings in the record indicate that Inman made progress towards his goals.  He began to see improvement as early as September 2014.  Moreover, examination findings reflected a decrease in symptoms such as crying spells and anger, and major symptom relief in October 2014.  Inman's improvement and progress continued in 2015.

The Court concludes that the ALJ had a legitimate basis to assign more weight to the opinion of Dr. Pittman over those of Drs. Adams and Vincent.

"An ALJ adequately supports his RFC determination when he considered all limitations supported by the record evidence and ties the record evidence to the limitations included in the RFC finding."  *Vang v. Saul*, 805 F. App'x 398, 402 (7th

Cir. 2020) (internal quotation marks omitted).  Inman notes that in October 2015, Dr. Ahmed completed an RFC explaining that Inman had wheezing, coughing and shortness of breath.  He would need unscheduled breaks during the day when he could sit quietly.  Therefore, limitations were provided and the vocational expert stated that being off task 7-8% more than the scheduled breaks would result in no competitive employment.  Inman contends the ALJ failed to explain how she arrived at the light RFC and the evidence in support of that conclusion.

While Dr. Ahmed  identified a number of Inman's symptoms that were due to his COPD, Dr. Inman did not note any limitations stemming from COPD.  Because the ALJ stated no functional limitations beyond the diagnoses, the ALJ had a legitimate basis to decline to give Dr. Ahmed's opinion any weight.

### D. ALJ's subjective symptom analysis

Inman contends that the Commissioner points to no evidence in the record to support Inman's conditions are actually controlled.

The ALJ found that regarding Inman's statements about the intensity, persistence and limiting effects of his symptoms, the evidence does not support the severity or degree of limitation alleged.  Inman contends no physician opined that his symptoms were tied to treatment or lack of treatment, and the ALJ should not

have referenced his failure to quit smoking. Inman further claims that the ALJ erred in finding that his mental symptoms improved with medication adjustments.

In evaluating Inman's symptoms, the ALJ noted that Inman's respiratory symptoms worsened when he failed to take his inhaler medication or other prescribed treatment. The ALJ also noted that Inman missed appointments with his pulmonologist. Moreover, Inman delayed getting a chest x-ray and pulmonary function tests from his pulmonologist for nearly a year. By then, Inman had developed moderate airway obstruction and mile emphysematous changes.

While the claimant's failure to quit smoking should not be significant in assessing his subjective symptoms, *see Penrod on behalf of Penrod v. Berryhill*, 900 F.3d 474, 478 (7th Cir. 2018), the ALJ considered a number of factors in evaluating Inman's symptoms. The ALJ considered the objective medical findings, test results, treatment received, and effect of such treatment.

The ALJ considered statements from Inman's daughters, Stephanie Phillips and Wendy Pohlman. The ALJ noted that Phillips testified Inman was out of breath rising from a chair. He used to be able to perform household chores, but now is unable to. Inman's girlfriend helps him remember his medications and appointments. In considering Inman's daughters' statements, the ALJ considered the nature and extent of the relationship, whether the evidence is consistent with

other evidence, and any other factors that tend to support or refute the evidence. The ALJ questioned the accuracy of their statements because neither Pohlman nor Phillips are medically trained. Given their familial relationship, neither witness is a disinterested third party. It is thus plausible the statements could be colored by affection for Inman. Finally, the ALJ found that the daughters' statements, like Inman's statement, are not consistent with the preponderance of the opinions and observations of the medical professionals. The Court concludes that the ALJ provided sufficient reasoning for determining that the statements were not entitled to significant weight.

### III. CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's Decision was supported by substantial evidence.

Ergo, the Plaintiff's Motion for Summary Judgment [d/e 12] is DENIED.

The Defendant's Motion for Summary Affirmance [d/e 16] is GRANTED.

The Commissioner's Decision is Affirmed.

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk will substitute Kilolo Kijakazi, Acting Commissioner of Social Security, and terminate Andrew Saul as Defendant in this suit.

The Clerk will enter Judgment and terminate this case.

ENTER: November 19, 2021

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge